■ MADGE WALSH, Appellant, v. LILLIAN ANDORN et al., Respondents.— Judgment, Supreme Court, New York County, entered on September 22, 1972, dismissing the complaint in this action for a declaratory judgment, reversed, on the law and on the facts, without costs and without disbursements, and vacated, and judgment awarded to plaintiff declaring her to be the lawful wife of James A. Walsh, deceased, and, as such, entitled to all pension benefits commencing six years from the date of the institution of this action. The unilateral Mexican divorce decree obtained without notice to plaintiff and which purportedly dissolved her marriage to the decedent, a member of the

New York City Police Department and its pension fund, was invalid. It is clear that the decedent was never a bona fide resident of Mexico (*Gorie* v. *Gorie*, 26 A D 2d 368). Accordingly, the decedent's subsequent Connecticut marriage to defendant Andorn was a nullity and conferred upon her no right by operation of law to the pension benefits in issue. However, plaintiff did not bring this action until after more than six years had elapsed from the date of death and commencement of pension payments to defendant Andorn. Recovery of pension benefits accruing more than six years prior to the commencement of this action are time-barred (CPLR 213, subd. [1]). Concur — Stevens P. J., Markewich, Murphy and Capozzoli, JJ.; Kupferman, J., dissents in part in the following memorandum: While it is obvious that the marriage between the plaintiff and the decedent was never properly dissolved, the problem of the pension and the Statute of Limitations warrants a discussion at some length, as was done by the Trial Judge in his logical conclusion that the plaintiff was barred by laches and the Statute of Limitations. Plaintiff and the decedent were married in 1921. They were remarried in 1938 in New York, because the original marriage record was destroyed. They lived together in New York City until 1930. For reasons of sickness, plaintiff moved to Long Island, while her husband, a member of the Police Department, remained in New York City, because the then "Lyons Law" prohibited his living outside of the city. Decedent retired from the Police Department in 1956, but the separate residence continued. Plaintiff contends they remained on friendly terms until 1960. In 1959, he obtained the invalid unilateral Mexican divorce, and shortly thereafter married the defendant in Connecticut, and they lived in New York City in Riverdale. In 1963, he notified the Police Pension Fund that he wanted his beneficiary changed "to my present wife". He died in 1964, and the defendant was awarded his widow's pension. Some 6½ years later, plaintiff had a lawyer friend inquire of the Pension Bureau as to decedent's whereabouts and discovered her husband was dead. She then made claim to the pension. Payments were thereafter held in escrow. Plaintiff testified to some desultory inquiries between 1960 and 1970 as to her husband's whereabouts, but it is obvious that her interest in the man was a far cry from that of Henry Wadsworth Longfellow's legendary Evangeline. So we have a technically valid marriage upon which plaintiff bases her claim. The laches is clear, and the six-year Statute of Limitations, CPLR 213, has run from the time the pension right accrued to plaintiff by death. (See *Sorrentino* v. *Mierzwa*, 25 N Y 2d 59.) We now come to the problem of the effect of the Statute of Limitations on the claim. First, it should be noted in passing that the Police Pension Fund is also a defendant, and the determination by the Majority mandates upon them a burden with which even the United States Supreme Court could not readily cope (see, e.g., *Williams* v. *North Carolina*, 317 U. S. 287, 325 U. S. 226), and that is to go behind every divorce decree to see whether it is valid. " As in other cases generally, the cause of action upon a claim for a pension accrues when a suit may be maintained thereon, and the statute of limitations begins to run at that time. It has been held that with respect to a pension, the statute of limitations commences running when the claim for the pension is formally rejected by the pension board or agency. It may be observed, in this connection, that an action to determine the existence of the right to a pension necessarily precedes, and is distinct, as regards the commencement of the period of limitation, from, an action to recover instalments which have fallen due after the pension has been granted." (60 Am. Jur. 2d, Pensions and Retirement Funds, § 70.) Once the pension right has been determined, as here, to belong to the second "wife", then the question is whether, under the

Statute of Limitations, the whole claim becomes incontestable after six years (*Dillon* v. *Board of Pension Comrs.*, 18 Cal. 2d 427), or whether the individual monthly periodic payments have a life of their own. The majority has decided on the latter. While I am inclined to the former view, the logical approach is somewhere in between and avoids inequities. "The right to receive a pension is a very different right from the right to receive payment once the basi¢ right to receive the pension itself has been determined. Once the right to receive a pension has been determined, then the receipt of the pension is a continuing one. The basic or primary right (to receive the pension) is not a continuing one and may be barred by laches or by a statute of limitations." (*Board of Trustees of Policemen's Pension Fund* v. *Koman*, 133 Col. 598, 605.) The claim of the plaintiff should be barred until she has a determination as to her standing as the wife, which we now so declare. That should start a new period of time running, and so future payments only should be made to her. This is in accordance with CPLR 206 (subd. [a]) computing "from the time when the right to make the demand is complete ". The order of this court, entered on February 26, 1973, is vacated. Settle order on notice.